ROYAL *v.* ECORSE POLICE & FIRE COMMISSION.

1. MUNICIPAL CORPORATIONS—POLICE AND FIRE COMMISSION—PUBLIC PEACE.

City police and fire commission, given entire control of the police force, is thereby made responsible to the people for the preservation of the public peace.

2. SAME—POLICE DEPARTMENT.

The control of a city police department is a function of local municipal government.

3. SAME—POLICE DEPARTMENT—DISCIPLINE—COURTS.

Neither a circuit court, nor the Supreme Court on appeal from the circuit court, should superimpose its judgment over that of a city police and fire commission and review questions of fact and weigh evidence, nor determine whether the probabilities preponderate one way or another, but simply determine whether the evidence is such as justifies the findings of the commission in action it takes with respect to discipline of members of the police force.

4. SAME—POLICE CHIEF—DISCIPLINE.

Evidence of insubordination by police chief *held,* to justify police and fire commission's determination that his usefulness as police chief was seriously impaired because of his attitude toward the commission, the latter being charged with the duty to maintain proper discipline within the department and between the head of the department and the commission.

5. SAME—POLICE AND FIRE COMMISSION—INSUBORDINATION—TRIAL.

A municipal charter which prohibits the police and fire commission from passing judgment of insubordination without a trial is construed as intending a fair and impartial trial.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 37 Am Jur, Municipal Corporations § 109.
[2, 3] Matters pertaining to police department as within exclusive control of municipalities under home-rule charters. 105 ALR 259.
[4, 5] 47 Am Jur, Sheriffs, Police and Constables § 16 *et seq.*
[6] 47 Am Jur, Sheriffs, Police and Constables § 20.

6. SAME—POLICE CHIEF—INSUBORDINATION—FAIR TRIAL—COMMIS-
SIONERS AS WITNESSES.

> Police chief who was charged with insubordination did not receive
> a fair trial by the 5-member police and fire commission, where
> 2 of the 4 members of the commission present were witnesses
> who testified against the police chief and also sat in judgment
> as to his guilt or innocence.

Appeal from Wayne; Culehan (Miles N.), J. Submitted January 11, 1956. (Docket No. 75, Calendar No. 46,425.) Decided April 2, 1956. Rehearing denied May 14, 1956.

Certiorari by Alvin Royal to review action of Police and Fire Commission of the City of Ecorse demoting him from chief of police on charges of insubordination. Judgment for plaintiff quashing proceedings of commission. Defendant appeals. Affirmed.

*Philip J. Neudeck,* for plaintiff.

*Victor T. Mitea,* City Attorney (*Edward N. Barnard,* of counsel), for defendant.

KELLY, J. The Ecorse police and fire commission found plaintiff guilty of insubordination, disrespect toward superior officers and failure to comply with the orders of the commission, and demoted him from chief of police to the rank of detective-lieutenant. Plaintiff appealed by certiorari to the circuit court of Wayne county. The trial court held that the commission adjudged the plaintiff guilty arbitrarily and capriciously and without valid and substantial evidence and further that the 2 commissioners who testified before the board should have disqualified themselves to sit in judgment after having been witnesses. Defendant appeals from said judgment pursuant to leave granted by this Court.

Police Commissioner Stroia testified that on February 22, 1954, he had an interview and conversation with plaintiff in plaintiff's office in the city hall; that during this conversation the plaintiff became very angry and in a loud and threatening voice stated that he did not like the way the commission operated and further that "if they (the commission) don't leave me alone, somebody's going to get hurt." He further stated that the plaintiff criticized the commission's action in promoting one Lieutenant Gilman to the rank of inspector and said that the commissioners were a bunch of dummies and that if Commissioner Montry, or any other commissioner, stepped into the police station he would see to it that they were thrown out.

Commissioner Montry testified that after being informed by Stroia of the conversation between plaintiff and Stroia, he called plaintiff on the telephone and plaintiff confirmed what Stroia had told him and stated to Montry that if he would go to the police station he would meet him there in 10 minutes and would throw him out of the station. Montry also testified that plaintiff objected to and resented the commission's action in promoting Lieutenant Gilman and that plaintiff failed to cooperate with Gilman or to carry out the commission's orders that he give Gilman a key to plaintiff's office.

Plaintiff testified that in his interview with Stroia, above referred to, he was emotionally upset and admitted that he "flew off the handle," that he did say that Commissioner Montry "should be thrown out" of the station, but couldn't recall whether he said he would throw him out. In regard to Gilman, plaintiff testified that he had never given him any orders after he was promoted as inspector, but later qualified this statement by saying: "Any city license would come in, I would forward it to him, or investigation be made, I would forward it to him."

In regard to the key episode, plaintiff admitted that he was requested on Saturday, February 20, 1954, to give Gilman a key to his (plaintiff's) office, that he agreed to do so and stated that he would have done so on the following Monday, February 22d, if he "hadn't had the blowup with Commissioner Stroia," that he had no opportunity subsequent to said interview with Stroia to give Gilman the key for the reason that on the following morning (Tuesday, February 23d) he was suspended from office.

The charter of the city of Ecorse provides for a police and fire commission consisting of 5 members to be appointed by the mayor, which commission "shall have general control and management of the police department and fire department." This charter provides:

"All appointments to positions as policemen and firemen shall be made by the commission. * * * The commission may discipline, suspend temporarily and discharge permanently, any member of the police or fire department for any cause which the commission in the exercise of their discretion deem sufficient, provided, however, that neither the chief of the police department nor the chief of the fire department, nor any member of the police or fire forces except a probationary member shall be dismissed unless a formal complaint of the cause or causes of his suspension or removal be served upon him, and after trial and conviction by the commission sitting as a trial board. The decision of the commission shall be final."

A police manual was in effect at the time of the hearing providing that any member of the department may be dismissed when charged and found guilty of insubordination or disrespect toward a superior officer, criticizing department orders, overbearing, oppressive or tyrannical conduct in the dis-

charge of duty, or any other acts or omission contrary to good order and discipline.

Plaintiff does not endeavor to justify his behavior of February 22d toward Stroia and Montry, but attempts to take same out of the realm of disciplinary judgment by urging that such behavior was not such as affected the public welfare. In this regard plaintiff quotes from Mechem, Public Offices and Officers, § 457, p 290, as follows:

"Where the removal is to be for *official* misconduct or for misfeasance or maladministration *in office,* the misconduct which shall warrant a removal of the officer must be such as affects his performance of his duties as an officer and not such only as affects his character as a private individual."

Plaintiff also calls this Court's attention to the case of *Carroll* v. *City Commission of City of Grand Rapids,* 265 Mich 51. In this case the police chief of Grand Rapids was removed by the city commission for alleged official misconduct and insubordination. The order of removal was vacated upon an appeal to this Court and in its opinion this Court said that the alleged insubordination was not based upon any act that had to do in any way with the discharge of official duties, and stated (p 58):

"He could not be captiously removed on trivial or technical grounds. If he was to be removed at all it must be removal for cause and that which is charged as a reason or justification for removing one from office for cause must relate to and affect the administration of the office. It must be something which in a material way affects the rights and interests of the public."

In *Fraternal Order of Police* v. *Lansing Board of Police & Fire Commissioners,* 306 Mich 68, this Court commented upon the right and duty of the commis-

sioners to control the police force and see to it that discipline was maintained, by stating (pp 77, 78):

"The charter of the city of Lansing [1909, as amended to 1940], chap 14, § 212, specifically gives the board 'entire control of the police force,' and it is thus responsible to the people for the preservation of the public peace. 'There is no doubt the control of a city police department is a function of local municipal government.' *Smith* v. *Flint City Commission,* 258 Mich 698, 700.

"In *Coane* v. *Geary,* 298 Ill App 199, 206 (18 NE2d 719), the court quoted with approval a statement from the opinion rendered in *O'Regan* v. *City of Chicago,* reported in 37 Chicago Legal News, p 150, December 24, 1904. That statement is applicable to the instant case. It reads, in part, as follows:

" ' "A police force is peculiar, *sui generis,* you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force, organized under the laws of the United States and equally as important as to the functions it is required to perform.

" ' "It is not an ordinary branch of the executive government like the mayor's office even, your water department, the comptroller's department, the health department, even; but, as I say, it is peculiar to itself, and to look at it in the same light that other branches of the executive department are regarded would be a mistake in a judicial decision. It is a department which requires that the members of it shall surrender their individual opinion and power to act, and submit to that of a controlling head just as much as the common soldier must surrender his own opinion and power of action to that of his commanding officer. And there is the same necessity of discipline—of regulation existing in the police department that exists in regard to the military department. Strict discipline must be enforced, and it must be enforced in a manner that is effective, and with-

out the supervision or regulation of any other department of the State, and, particularly, without any attempt on the part of the judicial department (which is a branch of the government entirely distinct and separate from the executive department), to regulate it in any way, and particularly, to regulate its discipline." ' "

In determining questions such as here presented to the trial court and now presented in this appeal to this Court, neither court should superimpose its judgment over that of the commission and review questions of fact and weigh evidence, nor determine whether the probabilities preponderate one way or another, but in such appeals simply determine whether the evidence is such as justifies the findings of the commission. See *Carroll* v. *City Commission of City of Grand Rapids*, 266 Mich 123; *Bischoff* v. *County of Wayne*, 320 Mich 376; *Mapley* v. *City of Pontiac*, 288 Mich 396; *In re Fredericks*, 285 Mich 262 (125 ALR 259).

This Court is not called upon to state what decision it would have made if acting in the capacity of commissioners at the hearing. The record in this case is unusual inasmuch as there was no testimony offered against plaintiff's services, during his 15 years on the Ecorse police force, from patrolman to chief, except the incident on and just before February 22d, above referred to.

There was evidence, however, of insubordination that would justify the commission in determining that plaintiff's usefulness as a police chief was seriously impaired because of his attitude toward the commission. The commission was charged under the charter to maintain proper discipline not only within the department but between the head of the department and the commission. The *Carroll Case, supra,* differs from the instant case because in the

*Carroll Case* there was no evidence of insubordination.

When Commissioner Stroia was called to testify, counsel for plaintiff objected to Stroia acting as a witness and then as a commissioner sitting in judgment upon his own testimony.

Counsel for the commission called attention to the fact that only 4 of the 5 commissioners were present at the hearing due to 1 of the commissioners being seriously ill in Florida and that if the 2 commissioners who were going to testify disqualified themselves there would not be a quorum present at the hearing. Counsel for the commission then stated:

"I think we don't have a desirable situation either way, but you have got to do the best you can, and if these men did disqualify themselves, we wouldn't have a quorum, and though I don't approve of witnesses also sitting in judgment, I would suggest this, that if this matter would be adjourned until the fifth commissioner did return and have a trial at that time and perhaps have these men disqualify themselves, then you could still have 3 supposedly unbiased commissioners sitting in judgment which would still constitute a quorum. I would put that question to Mr. Neudeck (attorney for plaintiff)."

Plaintiff's counsel answered this offer of adjournment by stating that he was informed the commissioner in Florida would be absent for an extended period of time and inquired as to whether during the period of adjournment plaintiff's salary as police chief would continue to be suspended and, when informed such would be the case, stated that he had no alternative but to proceed with the hearing.

Neither the charter nor the police manual referred to a situation where the commissioner or commissioners were witnesses and also sat in judgment as commissioners.

It is evident, however, that when the people of Ecorse provided in the charter for a formal complaint and prohibited judgment of insubordination without a trial, they meant a fair and impartial trial.

The attorney for the commission was correct in his statement that he did not relish the idea of having judgment pronounced by 4 commissioners, 2 of whom also occupied the role of accusing witnesses. His excuse, however, that to disqualify Commissioners Stroia and Montry would prevent a quorum is not tenable. The commissioner whose illness prevented his attendance at the hearing, and, from all indications, would prevent his attendance for a lengthy time in the future, could have been and should have been replaced by the mayor with a commissioner who could have accorded a fair and impartial judgment.

Appellant cites 6 cases in an endeavor to justify the actions of the present commissioners occupying both the role of main witnesses against plaintiff and then passing judgment as to whether plaintiff was guilty as charged. None of the cited cases involved a question comparable to the one presented in this appeal, as in none of these 6 cases did the persons who sat in judgment testify at the hearing they were judging.

Commissioners Montry and Stroia were the only witnesses who offered testimony against the plaintiff in the present proceedings.

The trial court was in error in finding that there was no valid or substantial evidence supporting the action of the police and fire commission of the city of Ecorse; however, the trial court was not in error in finding that the plaintiff did not receive a fair and impartial trial because of the fact that the only 2 witnesses who testified against plaintiff also sat in judgment as to his guilt or innocence.

The judgment of the trial court ordering the proceedings in said cause before the police and fire commission of the city of Ecorse be quashed and held for naught is affirmed.   Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, REID, BOYLES, CARR, and BLACK, JJ., concurred.