## RINALDI v CITY OF LIVONIA

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSIONS—RULE-MAKING POWER—MUNICIPAL EMPLOYEES AND OFFICERS.

   A municipal civil service commission rule which prohibits violation by employees and officers of the specific rules of their particular departments does not delegate the rule-making power of the commission to the various departments where the commission's review and imprimatur are necessary before department rules are effective (Livonia Civil Service Commission Rule 27.2[c]).

2. APPEAL AND ERROR—NEW THEORY ON APPEAL.

   A case will not be reviewed on appeal on a theory different from that on which it was tried.

3. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—STANDARD OF CONDUCT—CIVILIAN EMPLOYERS.

   A municipal police force may require a higher standard of conduct from its officers than a civilian employer demands from its employees.

4. MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—CONDUCT UNBECOMING AN OFFICER—LEAVING SCENE OF ACCIDENT—CONSTITUTIONAL LAW—VAGUENESS.

   A former municipal police officer, who was discharged for "conduct unbecoming an officer" after leaving the scene of an accident while off duty, may not successfully challenge as unconstitutionally vague the police department rule under which he was discharged where the former officer should

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Service §§ 6, 8.
   Validity, construction, and application of probationary provisions of civil service statutes or regulations. 131 ALR 383.

[2, 7] 5 Am Jur 2d, Appeal and Error § 702 *et seq.*

[3–5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions, § 234.

[6] 5 Am Jur 2d, Appeal and Error §§ 900, 901.

[8–11] 20 Am Jur 2d, Courts § 111 *et seq.*

[12] 5 Am Jur 2d, Appeal and Error § 741.

reasonably have understood that his conduct was proscribed by the rule.

5. MUNICIPAL CORPORATIONS—CIVIL SERVICE COMMISSIONS—POLICE DEPARTMENT—CONDUCT UNBECOMING AN OFFICER—CITY CHARTER.

A municipal civil service commission's adoption of a rule that permits discharge of a police officer for "conduct unbecoming an officer" is within a city charter's grant of authority to the commission to establish cause for removal, suspension, or demotion of civil servants (Livonia City Charter, Chp V, § 16[j], Livonia Civil Service Commission Rule 27.2[c], Livonia Police Manual, § 8.27[8]).

6. CONSTITUTIONAL LAW—COURTS—APPEAL AND ERROR—AVOIDING CONSTITUTIONAL ISSUE.

The Court of Appeals will not undertake a constitutional analysis when such an analysis can be avoided.

7. APPEAL AND ERROR—ADMINISTRATIVE TRIBUNALS—SCOPE OF REVIEW—COMPETENT EVIDENCE—INFERENCES—CONSTITUTIONAL LAW.

A court will overturn the decision of an administrative tribunal only where the decision is contrary to law or is not supported by competent, material and substantial evidence; the evidence may be examined to determine whether the tribunal's finding is justified as a legitimate inference from the facts proved, whether or not that inference would have been drawn by the appellate court (Const 1963, art 6, § 28).

8. COURTS—SUPERINTENDING CONTROL—APPEAL AND ERROR—ADMINISTRATIVE TRIBUNALS—ISSUES OF LAW.

A court, when reviewing an administrative tribunal decision by way of superintending control, is limited to a review of the face of the record; superintending control is generally for review of disputed issues of law, not disputed issues of fact.

9. CERTIORARI—SUPERINTENDING CONTROL—COURTS—COURT RULES.

The writ of certiorari has been superseded by an order of superintending control (GCR 1963, 711.3).

10. COURTS—SUPERINTENDING CONTROL—APPEAL AND ERROR—ADMINISTRATIVE TRIBUNALS—ISSUES OF FACT—EVIDENCE OF A SHAM.

A court, when reviewing an administrative tribunal decision by way of superintending control, may look beyond the record where the record suggests that the decision is based on biased evidence and the plaintiff alleges the decision is a sham.

11. Courts—Superintending Control—Appeal and Error.

 The power of superintending control over inferior courts is an extraordinary power, is not hampered by specific rules or means for its exercise, and is unlimited, being bounded only by the exigencies which call for its exercise.

12. Appeal and Error—Administrative Bodies—Local Concerns—Public Policy.

 It is not consistent with public policy to disturb the action of the bodies entrusted with managing local concerns, unless upon grounds which indicate a probability that actual wrong has been done by the course taken.

Appeal from Wayne, John R. Kirwan, J. Submitted December 8, 1975, at Detroit. (Docket No. 22152.) Decided May 18, 1976.

Complaint for an order of superintending control by Charles J. Rinaldi against the Civil Service Commission of the City of Livonia to obtain review of the commission's decision to dismiss him from the Livonia Police Department. Relief denied. Plaintiff appeals. Affirmed.

*Charest, Clancy & Katulski,* for plaintiff.

*Harry C. Tatigian,* City Attorney, and *Robert B. Brzezinski,* Assistant City Attorney, for defendant.

Before: V. J. Brennan, P. J., and R. M. Maher and G. W. Britten,* JJ.

Per Curiam. Plaintiff, a former City of Livonia police officer, appeals a Wayne County Circuit Court's October 22, 1974 order denying superintending control and affirming the decision of defendant, Civil Service Commission of the City of Livonia that discharged plaintiff from his position. We affirm the decision of the circuit court.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff was accused of leaving the scene of an accident in which he was involved while off duty. This conduct caused him to be discharged by the Livonia Chief of Police. Plaintiff appealed the chief's decision to the commission.

After an extensive, three-day administrative hearing, in January, 1973, plaintiff's discharge was upheld by the commission. He sought, and was denied, superintending control, raising a number of issues that he has renewed on this appeal of the order denying superintending control.

I.

He first contends that his discharge was based on rules and regulations that were either invalidly adopted or not adopted at all by the civil service commission. The charter for the City of Livonia[1] reads, in part:

"[T]he Civil Service Commission shall (1) establish and administer * * * rules and regulations governing the terms and conditions of employment and service * * * (2) establish and administer rules and regulations governing residence requirements, probation periods, service records, seniority, hours of service, work-week, vacations, leaves, time off, promotions, demotions, suspensions, removals, reinstatements, resignations, lay offs, and age limits * * * (3) make such rules and regulations, not inconsistent with this Charter, as it deems necessary and advisable for the administration of the Civil Service program * * * ." Chapter V, § 16, Subsection (b).

The charter also states:

---

[1] Livonia is a home-rule city with statutory authority to establish, by charter, a civil service commission. MCLA 117.4i; MSA 5.2082. The case does not concern special civil service commissions authorized by MCLA 38.501 *et seq.;* MSA 5.3351 *et seq. See Winter v Royal Oak City Manager,* 317 Mich 259; 26 NW2d 893 (1947).

"Any employee or officer in the classified Civil Service may be removed, suspended, or demoted by the appointing authority for cause, as shall be established by the Civil Service Commission, by an order in writing stating specifically the reasons therefor." Chapter V, § 16, Subsection j.

Under this authority granted in the charter, the commission had promulgated, as of the time of plaintiff's discharge proceedings, 35 rules and regulations. Rule 27, entitled, "Suspensions, Demotions and Removals", delineates the causes for removals, suspensions and demotions of civil service employees and establishes procedures to be followed. Listed in Rule 27.2 are 21 causes, including:

"(b) Any act that would reflect unfavorably on the prestige of the city.
"(c) Violations of specific rules and regulations of their own department if not in conflict with the Rules and Regulations of the Civil Service Commission. Departmental rules must be reviewed by the Civil Service Commission before taking effect."

Plaintiff was charged with violating commission Rule 27.2(b), above, and with violating two rules and regulations of the Division of Police found in § 8.27 of the Division of Police Manual:

"Section 8.27. A member of the Division found guilty of violating a rule or regulation of this Division * * * or violating any one of the following listed offenses shall be subject to reprimand, suspension with resultant loss of pay, dismissed, or suffer such other lawful punishment as the Chief of Police may direct.

* * *

"8. Conduct unbecoming an officer, which shall include any act or conduct not specifically mentioned in the rules or regulations which tend to bring the Depart-

ment into disrepute or reflects discredit upon the individual as an officer.

\* \* \*

"33. Failure to report a known violation or law of city ordinance."

. The commission found that plaintiff did not violate commission Rule 27.2(b), but had violated §§ 8.27(8) and 8.27(33) of the Division of Police Rules and Regulations.

Plaintiff contends that the city charter does not permit an employee to be discharged for the violation of department or division rules alone. He contends that commission Rule 27.2(c), authorizing departments to promulgate rules and regulations concerning discharge, is a delegation of the commission's power to the Division of Police that is not allowed by the charter.

The charter clearly allows the commission to establish rules and regulations concerning discharge. There can be no successful argument here that any provisions in the charter would have prevented the commission from initially establishing on its own the particular standards of conduct that plaintiff was found to have violated. See *Brady v Detroit,* 353 Mich 243, 248; 91 NW2d 257 (1958). Plaintiff must show that the commission, in Rule 27.2(c), has abdicated its charter-given responsibility by allowing the Division of Police to establish rules and regulations. Plaintiff has failed to make this showing.

We do not consider Rule 27.2(c) an unlawful delegation of power by the commission, for we do not consider the rule as a delegation of power at all. The rule merely allows a department to initiate the rule-making process. The commission's review and imprimatur are necessary before the

proposed rules and regulations may be effective; the commission retains the power given it by the city charter. The function of the Division of Police in this instance is advisory only and involves no impermissible delegation of the commission's authority. *Cf., Davis v Imlay Township Board,* 7 Mich App 231, 236; 151 NW2d 370 (1967).

Consequently, we need not decide if the city charter would ever allow the commission to delegate rule-making powers in discharge matters to the Division of Police.[2]

The plaintiff argues, for the first time on appeal, that the rules and regulations of the Division of Police were never actually reviewed by the commission, as required by Rule 27.2(c), and are therefore ineffective. This assertion was not advanced below; on appeal a case will not be reviewed on a theory different from that on which it was tried.[3] *E.g., Thompson v City of Ecorse,* 7 Mich App 492, 495; 152 NW2d 51 (1967).

---

[2] We suspect that, as a municipal corporation possesses powers "necessarily or fairly implied in or incident to the powers expressly granted * * * [or] essential to the accomplishment of the declared objects and purposes of the corporation", *Home Owners' Loan Corp v Detroit,* 292 Mich 511, 515; 290 NW 888 (1940), so might a civil service commission possess the power implied in express powers found in a city charter to delegate certain rule-making decisions to certain departments. *Cf. Coffman v State Board of Examiners in Optometry,* 331 Mich 582, 589–590; 50 NW2d 322 (1951). While we find in our jurisprudence no consideration of this precise question, there may be *sub silentio* approval of the proposition that a police department may set standards of conduct for police officers that govern in a civil service discharge hearing. *O'Dell v Civil Service Commission of Flint,* 328 Mich 631, 638; 44 NW2d 157 (1950).

[3] We note, nonetheless, in passing that the commission's appellate brief, in discussing the delegation issues, alleges that the rules and regulations of the Division of Police are reviewed and adopted by the commission. Moreover, the Division of Police Rules and Regulations Notebook, introduced into evidence at the hearing and at the court proceedings below, includes the introductory statement that "These Rules and Regulations have been compiled, edited, and approved by the Mayor, Director of Public Safety-Police, and the Civil Service Commission". The admissibility of this evidence was never challenged by plaintiff.

## II.

Plaintiff's second ground for appeal is that the rules and regulations which he was found to have violated are too vague and fail to provide sufficient guidance on the prohibited conduct. Plaintiff cites *Civil Service Commission of Hamtramck v Pitlock,* 44 Mich App 410; 205 NW2d 293 (1973), and *Sponick v Detroit Police Department,* 49 Mich App 162; 211 NW2d 674 (1973), where this Court decided that "conduct unbecoming an officer" is too vague a standard of behavior. The commission would ask us to reconsider the *Pitlock* and *Sponick* cases in light of *Parker v Levy,* 417 US 733; 94 S Ct 2547; 41 L Ed 2d 439 (1974), where the U.S. Supreme Court upheld Article 133 of the Uniform Code of Military Justice ("conduct unbecoming an officer and gentleman") against constitutional attack.

*Pitlock* expressly avoided any constitutional question, 44 Mich App 410, 412, but held that the "conduct unbecoming an officer or employee" rule was "no rule at all and, therefore * * * [did] not comply with the express requirements of Hamtramck's charter". 44 Mich App 410, 413–414.

Sponick clearly concluded that a regulation proscribing "conduct unbecoming an officer" is too vague to be valid, relying on the *Pitlock* analysis, *supra,* and on a constitutional analysis found in *Avrech v Secretary of the Navy,* 155 US App DC 352; 477 F2d 1237 (1973). The constitutional underpinnings of *Avrech,* and hence of *Sponick,* have been substantially removed by the *Parker v Levy, supra,* opinion. The *Levy* opinion upheld the court martial of an Army physician under the "conduct unbecoming an officer and gentleman" standard. The Court's opinion emphasizes three characteristics of the physician's case in rejecting the "vague-

ness" challenge: (1) Prior construction of the regulation narrowed its scope and supplied "considerable specificity by way of examples of the conduct". 417 US 754; 94 S Ct 2561; 41 L Ed 2d 456. (2) The regulations "by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain". 417 US 755–756; 94 S Ct 2561; 41 L Ed 2d 457. (3) Because of the "reasons which differentiate military society from civilian society, * * * Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter". 417 US 756; 94 S Ct 2561–2562; 41 L Ed 2d 458.

Of these three characteristics of the *Levy* case, this Court is of the opinion that the second is clearly present here.[4] Fleeing the scene of an accident in which one was involved fits squarely into the prohibition of Division of Police Manual, § 8.27(8), "conduct unbecoming an officer". The plaintiff should reasonably have understood that his speedy departure from the accident, and his failure to return when chastised by a witness who had followed him, was conduct that was proscribed by the Division of Police rules and regulations.[5]

---

[4] We are able to make no comment on the presence or absence of any prior construction that would narrow § 8.27(8) or provide specific examples of proscribed conduct. The parties have not addressed this issue. We note that *Levy* does not mandate a prior construction: "But even though sizable areas of uncertainty as to the coverage of the articles may remain after their official interpretation * * * further content may be supplied even in these areas by less formalized custom and usage." 417 US 754; 94 S Ct 2561; 41 L Ed 2d 456–457.

[5] *Bence v Breier,* 501 F2d 1185 (CA 7, 1974), contains an excellent discussion of the possible constitutional infirmity of a Milwaukee police department rule very similar to the present rule. ("Conduct unbecoming a member and detrimental to the service.") The court issued an alternative ruling: either the rule is totally unconstitutionally vague or the rule was vague as applied to the particular police-

We also believe that, as in the military, a police force may require a higher standard of conduct of its officers than a civilian employer demands of its employees. See *Royal v Ecorse Police & Fire Commission,* 345 Mich 214, 219–220; 75 NW2d 841 (1956). A police officer, intent on retaining his position on the force, can expect that he will be held to a higher standard of conduct regarding obedience to the laws and ordinances of this state than would a common civilian. The police officer has greater familiarity with the obligations of a motorist to remain at the scene of the accident. He must contemplate loss of employment for the conduct evidenced here.

We conclude that *Sponick's* constitutional analysis is not acceptable in the present case; the present plaintiff may not successfully raise a "vagueness" constitutional challenge to Division of Police Manual, § 8.27(8). Accord, *Milani v Miller,* 515 SW2d 412 (Mo, 1974).

Other civil servants, dismissed under comparable standards, may be more successful in arguing that their conduct is not squarely within the proscription of the "conduct unbecoming an officer" standard and that they were not apprised of the prohibited conduct. We make no comment on future factual situations; we hold only that the present plaintiff's conduct was clearly conduct unbecoming an officer.

man dismissed. We would agree with this latter holding but, as this opinion indicates, disagree with the former alternative. The opinion of Judge Jameson (concurring in part, dissenting in part) in our view correctly summarizes the law and the policies underlying the law in this area. Of the *Bence* case, we conclude only that the conduct of the policemen in that case is not nearly as egregious as the conduct of the plaintiff in the present case. Moreover, the present case, unlike the *Bence* case, involves no First Amendment freedoms and therefore the department rule requires less specificity. *See Smith v Goguen,* 415 US 566, 573; 94 S Ct 1242, 1247; 39 L Ed 2d 605, 612 (1974). *See also United States v Mazurie,* 419 US 544, 550; 95 S Ct 710, 714; 42 L Ed 2d 706, 713 (1975).

We must still decide if we should apply the *Pitlock* doctrine of vagueness under the city charter. Even if § 8.27(8) passes constitutional muster, is it so vague as to be prohibited by the charter's command that the civil service commission establish and administer rules concerning removals? We believe that the same analysis employed in addressing the constitutional question may be used to avoid the *Pitlock* doctrine.

If § 8.27(8), as applied in this case, is constitutionally sound, we believe that it is also permitted by the city charter as a proper exercise by the commission of its rule-making authority. As we have noted, the rule gave adequate guidance concerning the mode of conduct required of plaintiff officer. We also note that the Livonia City Charter has provided more express authority to the commission than did the Hamtramck Charter in the *Pitlock* case. In Chapter V, § 16, Subsection j, previously set out in full, the charter expressly allows the commission to establish cause for removal, suspension, or demotion; this is a more specific grant of authority than the general power to make rules and regulations. We find this grant sufficient to allow the commission to adopt Division of Police Manual, § 8.27(8), and to remove plaintiff officer for his violation of that section.

### III.

Plaintiff contends that Division of Police Manual, § 8.27(33), violates his Fifth Amendment[6] rights by requiring him to report his own violations of the law or risk his job. Our determination that § 8.27(8) is constitutional and the commission's determination that plaintiff violated that

---

6 US Const, Am V.

rule make our consideration of this Fifth Amendment challenge unnecessary; the order of discharge may stand on the basis of the § 8.27(8) violation alone. We will not undertake a constitutional analysis when we can avoid it. See *Lansing v Jury Rowe Realty Co,* 59 Mich App 316, 320; 229 NW2d 432 (1975).

## IV.

Plaintiff's fourth claim on appeal is that the circuit court should have allowed him to take depositions of the police chief and the commission members so that he might prove that the commission's action was based on prejudice rather than on the failure to report his accident.

A circuit court judge considering the administrative action by way of superintending control is generally thought to be limited in his review of the action. *Montiy v Civil Service Board of East Detroit,* 54 Mich App 510, 513–514; 221 NW2d 248 (1974), aptly summarizes the pertinent law:

"We note at the outset that the administrative review by way of superintending control is limited in nature. In *Detroit v General Foods Corp,* 39 Mich App 180, 190; 197 NW2d 315, 321 (1972), this Court summarized the standards for judicial review of an administrative tribunal as follows:

"'When a court reviews an administrative tribunal decision, it reviews the original record to determine if the decision is supported by competent, material and substantial evidence, and will overturn a decision only when such decision is *contrary to law,* or *is not supported by the necessary competent, material* and *substantial* evidence. Const 1963, art 6, § 28. We point out that under certiorari we are without power to determine issues of fact that are disputed. In the instant case the facts are undisputed. The question presented is one of law.'[1]

"In *O'Dell v Flint Civil Service Comm,* 328 Mich 631, 637; 44 NW2d 157, 160 (1950), the Michigan Supreme Court reiterated its earlier pronouncement on administrative review as stated in *Carroll v City Comm of Grand Rapids,* 266 Mich 123; 253 NW 240 (1934), where the Court stated:

" ' "The office of a certiorari is not however to review questions of fact, but questions of law. And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal." *Jackson v People,* 9 Mich 111 (77 Am Dec 491) [1860].' "

"¹ GCR 1963, 711.3 has provided that the writ of certiorari is now superseded by an order of superintending control."

In short, on superintending control the circuit court appears limited to a review of the face of the record. A review of this record of the commission's hearing reveals a number of unbiased witnesses who testified to plaintiff's involvement in the accident and plaintiff's leaving the scene of the accident. The only proof required to show a violation of Division of Police Manual, § 8.27(8), was proof that he knew he had been involved in a collision and that he knowingly left the scene of the accident. The record amply supplies this proof, through witnesses that can hardly be claimed to have had prior prejudices against plaintiff.

Were the record to suggest that the discharge was not based on unbiased evidence, and were the plaintiff to allege that the decision was a sham, a circuit court might possibly look beyond the record in considering superintending control. The case law on the scope of review for superintending

control when fraud or unfairness is alleged to have occurred at the administrative level is by no means clear. *Compare Applegate v State Board of Dentistry,* 336 Mich 42, 48; 57 NW2d 438 (1953) (scope of review on certiorari petition limited to review of questions of law in absence of fraud; fraud exception found in statutory scheme) *with O'Dell v Civil Service Commission of Flint,* 328 Mich 631, 637–638; 44 NW2d 157 (1950) (examination of record alone revealed "full and fair" hearing).

In looking beyond the record, the circuit court might possibly allow the plaintiff to utilize depositions to establish a factual basis of prejudice or fraud. As was stated in *In re Huff,* 352 Mich 402, 417–418; 91 NW2d 613 (1958) (Citing 14 Am Jur, Courts, § 265):

" 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur, it will be found able to cope with them. Moreover, if required, the tribunals have authority to exercise it will, by virtue of it, possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted. This power is not limited by forms of procedure or by the writ used for its exercise. Furthermore, it is directed primarily to inferior tribunals, and its relation to litigants is only incidental.' "

Perhaps a circuit court could allow a full trial to consider the possibility of fairness in the administrative hearing; a circuit court could clearly not allow a full trial merely to reconsider the evi-

dence. See *Lepofsky v Lincoln Park,* 48 Mich App 347, 357; 210 NW2d 517 (1973).

In the present case, the plaintiff does no more than state in conclusory terms that the decision was founded on prejudice. When the circuit court considered the motion for discovery and invited plaintiff to give evidence of the commission's bias, plaintiff's counsel was unable to present any evidence of impropriety. As was stated in *Gager v Board of Supervisors of Chippewa County,* 47 Mich 167, 170–171; 10 NW 186 (1881):

"As the granting of a writ of *certiorari* is largely discretionary we do not think it consistent with public policy to disturb the action of the bodies entrusted with managing local concerns, *unless upon grounds which indicate probability that actual wrong has been done by the course taken."* (Emphasis added.)

The circuit court properly denied the motion for discovery; if discovery is ever available on a petition for superintending control, this is not the case.

V.

Plaintiff finally contends that his removal was against the great weight of the evidence. Our reading of the entire record convinces us that the removal was supported by ample evidence.

We affirm the Wayne County Circuit Court's denial of superintending control. We affirm the Livonia Civil Service Commission.