WERNER v MACOMB COUNTY CIVIL SERVICE COMMISSION

1. STATUTES—CONSTRUCTION.

The words of a statute are to be given their ordinary meaning unless the context indicates that a different meaning was intended.

2. STATUTES—CIVIL SERVICE STATUTE—CONSTRUCTION—JUDICIAL IN-TERPRETATION—VIOLATIONS—KNOWLEDGE OF VIOLATION—DATE OF VIOLATION.

The 90-day limitation period during which a civil service employee may be dismissed for misconduct is measured from the time the discharging authority has knowledge of the violation rather than the actual date of the violation (MCLA 51.362; MSA 5.1191[112]).

3. APPEAL AND ERROR—CIVIL SERVICE—SCOPE OF REVIEW—EVIDENCE—COMMISSION'S FINDINGS.

A civil service commission administrative decision will be upheld where there is substantial evidence to support the finding of the commission; where there is supporting evidence an appellate court should accept and be bound by the civil service commission's finding even though some ambiguity may exist.

4. MUNICIPAL CORPORATIONS—CIVIL SERVICE—STATUTES—CHARGING DOCUMENT—STATEMENT OF CHARGES—STATUTORY PROTECTION—DUE PROCESS.

A statement of charges filed with the civil service commission to support the dismissal of a trial service employee must contain a written statement of the charges and the reasons for dismissal; there is no specific statutory mandate that the charging docu-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 155, 195, 207.
[2] 15A Am Jur 2d, Civil Service §§ 61, 63, 68.
[3] 15A Am Jur 2d, Civil Service § 79.
[4] 15A Am Jur 2d, Civil Service §§ 56, 57, 68.
[5] 7 Am Jur 2d, Attorneys at Law § 154.
[6, 7] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 316, 327.
    70 Am Jur 2d, Sheriffs, Police, and Constables §§ 12, 14, 15.

ment be sworn to, notorized or sanctioned by a judicial officer (MCLA 51.362; MSA 5.1191[112]).

5. ATTORNEY AND CLIENT—CONFLICT OF INTERESTS—DENIAL OF ACCUSATIONS—EVIDENCE—DUE PROCESS.

Allegations of an attorney's dual role and conflict of interests which resulted in a denial of due process will not be upheld on appeal where the claim is not supported by the record.

6. MUNICIPAL CORPORATIONS—ADMINISTRATIVE LAW—TERMINATION OF EMPLOYMENT.

The dismissal, at a termination of employment hearing, of charges alleging a deputy sheriff's misconduct regarding narcotics does not bar subsequent termination of employment proceedings against the deputy regarding other aspects of misconduct involving the same event or transaction.

7. MUNICIPAL CORPORATIONS—CIVIL SERVICE HEARINGS—DISCHARGE OF OFFICER—JUDICIAL ADMISSIONS—USE OF TRANSCRIPTS.

Discharge of a deputy sheriff based solely on his judicial admissions during a criminal trial of another party of his involvement with regard to narcotics is not unfair; the use of transcripts from judicial proceedings is allowable at civil service commission hearings to show such admissions under certain circumstances.

Appeal from Macomb, Frank E. Jeannette, J. Submitted April 20, 1977, at Detroit. (Docket No. 28862.) Decided August 22, 1977. Leave to appeal applied for.

Petition by Robert Werner before the Macomb County Civil Service Commission seeking reinstatement of employment as a Macomb County Deputy Sheriff. Reinstatement denied. Plaintiff appealed to the circuit court. Affirmed. Plaintiff appeals. Affirmed.

*Stewart, O'Reilly, Cornell, Donovan, Lascoe & Rancilio, P. C.* (by *John S. Lascoe* and *Edward L. Keller),* for plaintiff.

*Philip J. Anderson,* Chief Civil Counsel of Macomb County, for defendant.

Before: V. J. BRENNAN, P. J., and D. F. WALSH and J. N. O'BRIEN,* JJ.

V. J. BRENNAN, P. J. Plaintiff Robert Werner appeals from an order of the Macomb County Circuit Court affirming the Civil Service Commission which upheld his discharge by the Macomb County Sheriff. Werner was discharged from his position as a deputy sheriff because he admitted using heroin, cocaine, qualudes and other drugs while a deputy at various times from 1972 to April of 1974.

Werner was first discharged on May 6, 1974. A statement of charges and reasons for removal on that occasion related to Werner's part in the theft of heroin which was being held as evidence at the Roseville police department. This theft had allegedly occurred on April 8, 1974. The first discharge proceeding ended when Werner accepted a suspension until December 31, 1974, in lieu of the discharge. Werner's consent to the substituted suspension was signed on July 22, 1974, and the file was not closed by the Civil Service Commission until October 16, 1974.

On October 31, 1974, a second discharge was filed against Werner. The basis of this action was Werner's admission during the preliminary examination of Ronald Scribner on August 12, 1974, that he had used the narcotics and drugs involved in the theft of April 8, 1974. Scribner was being prosecuted for his part in this incident. A relationship between Werner's testimony at this preliminary examination, resolution of his first dismissal proceeding and the sheriff's participation in each are a matter of dispute. Defendant maintains that the sheriff knew of Werner's use of the narcotics

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in this case prior to his testimony at the August 12, 1974, proceeding. On the other hand, the sheriff maintained, and the Civil Service Commission found as a matter of fact, that his first actual knowledge of Werner's drug use came from newspaper accounts of the August 12, 1974, preliminary examination.

After requesting a public hearing, Werner moved to dismiss the charges against him. The main grounds for the motion were the delay between the events and the notice of discharge, and denial of various constitutional rights because of the outcome of the first proceeding. See MCLA 51.362; MSA 5.1191(112). The Civil Service Commission heard evidence of the dismissal motion on January 8, 16, and February 20, 1975. Plaintiff's motion was finally denied by written order on March 6, 1975.

With the question of the dismissal of charges out of the way, the Civil Service Commission proceeded to hear the merits of the discharge. Hearings on the merits were held April 17 and 24, 1975. The portions of the preliminary examination transcript from August 12, 1974, in which Werner admitted his drug use, were admitted as exhibits. The sheriff testified that he first learned of Werner's drug use through the newspapers and that the discharge was based on his reading of the preliminary examination transcript. By written order on May 7, 1975, the Civil Service Commission again denied a motion to dismiss and upheld Werner's discharge by the sheriff. The Macomb County Circuit Court affirmed the refusal of the Civil Service Commission to dismiss and found the sheriff was justified in discharging Werner.

On appeal, plaintiff brings two allegations of error. We will deal with each in order.

Plaintiff contends that the circuit court and county Civil Service Commission erred in finding that MCLA 51.362; MSA 5.1191(112) did not require dismissal of charges against a sheriff's deputy where the factual basis relied upon in discharging the deputy occurred more than 90 days before the notice of discharge was given, or, alternatively, in finding that the sheriff did not have actual notice of the alleged misconduct more than 90 days before the charges were brought.

We deal with several questions concerning the timing of the events leading up to the discharge and to the discharge itself. The questions arise from the wording of MCLA 51.362; MSA 5.1191(112): "All charges shall be void unless filed within 90 days of the date of the violation." Plaintiff contended by his motion to dismiss before the Civil Service Commission that the statute meant exactly what was stated and that since the conduct which resulted in his dismissal had occurred more than 90 days prior to the filing of the notice on October 31, 1974, he must be reinstated with back pay.

The general rule in statutory construction problems is that the words of a statute are to be given their ordinary meaning unless the context indicates that a different sense was intended. *Killingsworth v Police and Fire Department Civil Service Commission of the City of Saginaw,* 12 Mich App 340, 351; 162 NW2d 826 (1968). The plain words of the statute involved in this case seem to indicate that if the discharging authority does not discover the misconduct or does not act within 90 days of the misconduct itself, no subsequent action is justified. See *Konyha v Mt Clemens Civil Service Commission,* 393 Mich 422; 224 NW2d 833 (1975) (consideration of occurrences more than 90 days old and setting a degree of punishment prohibited).

However, we construed identical language in the Municipal and Fire Civil Service Commission Act where we refused to employ a literal interpretation of MCLA 38.514; MSA 5.3364. *Solomon v Highland Park Civil Service Commission,* 47 Mich App 536, 540; 209 NW2d 698 (1973), *lv den,* 390 Mich 790 (1973). In *Solomon,* we held that the 90-day period is measured from the time the discharging authority has knowledge of the violation rather than the actual date of the violation.

*Solomon* was followed in *Hunn v City of Madison Heights,* 60 Mich App 326, 332–333; 230 NW2d 414 (1975). Although neither case deals with a statute involved in this case, the subject matter and the language of the two statutes are identical. Given our belief that *Solomon* sets the correct standards by which to measure when the 90-day period begins to run in situations like the present, we hold that the 90-day period of MCLA 51.362; MSA 5.1191(112) runs from the time the discharging authority has knowledge of the misconduct.

Thus, we arrive at plaintiff's alternative argument, that the sheriff had knowledge of Werner's drug use more than 90 days prior to October 31, 1974. The Civil Service Commission found that the sheriff first had knowledge of Werner's drug use "on or shortly after August 12, 1974". This finding was affirmed by the Macomb Circuit Court.

The proper scope of review in such questions was stated by the Court in *Hunn:*

"The trial court should have limited its review to determining 'whether or not there is substantial evidence to support the finding of the civil service commission'. *O'Dell v Flint Civil Service Commission,* 328 Mich 631, 636; 44 NW2d 157 (1950). See, also, *Dillon v Lapeer State Home & Training School,* 364 Mich 1, 6–9; 110 NW2d 588 (1961).

"The very limited nature of the review of a decision of a municipal civil service commission by a circuit court was discussed in *Montiy v Civil Service Board of the City of East Detroit,* 54 Mich App 510, 513; 221 NW2d 248 (1974), which cited *Detroit v General Goods Corp,* 39 Mich App 180; 197 NW2d 315 (1972), for the rule that a court reviews an administrative decision by examining the record to determine if the decision is supported by competent, material, and substantial evidence. Only if the decision is not supported by such evidence, or if it is contrary to the law, can the court overturn the decision of a civil service commission. The court has no power to determine disputed question of fact.

"The Court in *Montiy* noted a further limitation on the scope of review in the circuit court by citing *Carroll v City Commission of Grand Rapids,* 266 Mich 123; 253 NW 240 (1934), as quoted in *O'Dell v Flint Civil Service Commission, supra,* 328 Mich at 637:

" ' "And in examining into the evidence the appellate court does so not to determine whether the probabilities preponderate one way or the other but simply to determine whether the evidence is such that it will justify the finding as a legitimate inference from the facts proved, whether that inference would or would not have been drawn by the appellate tribunal." ' " *Hunn v City of Madison Heights, supra* at 334–335.

See, also, *Rinaldi v Livonia,* 69 Mich App 58, 69–70; 244 NW2d 609 (1976).

Most of the effort before the commission in this case was devoted to determining whether the sheriff did or did not know about Werner's drug use prior to the August 12, 1974, preliminary examination. The basic conflict was between Sheriff Almstadt and Robert Pagano, the assistant prosecuting attorney who had the charges against Werner dismissed and had prosecuted Ronald Scribner. Pagano claimed he had discussed Werner's drug use with the sheriff by June 7, 1974, in attempting to persuade the sheriff to reinstate

Werner as an employee and have Werner testify against Scribner. Pagano also discussed a statement given by Werner to the prosecutor's office on June 17, 1974, and Werner's statement to the district judge in open court to support the warrant against Scribner. The record does not disclose if Werner admitted his drug usage on either of these occasions or if the sheriff actually saw the statements.

The sheriff did not deny that a conversation concerning Werner occurred; he just did not remember any mention of drug use, at least "hard drugs". The sheriff suspected that Werner was involved with drugs in more than a professional manner from statements other persons had made as early as the first dismissal on May 6, 1974. However, the sheriff steadfastly maintained that his first actual knowledge of Werner's heroin and cocaine use came from newspaper accounts of Werner's August 12, 1974, preliminary examination testimony in Scribner's prosecution.

Philip Anderson, the sheriff's attorney before the Civil Service Commission, had some knowledge of these events as well. He had been told by Werner's attorneys during negotiations on the first dismissal that much more was involved than taking the heroin from the Roseville police department. He suspected that the "much more" was Werner's drug use but did not know for sure. Anderson was aware of the various statements made by Werner in May and June but never asked to see them.

Though some ambiguity does exist in the record as to exactly when Sheriff Almstadt learned of Werner's drug use, we accept and are bound by the Civil Service Commission's finding that the sheriff first had actual concrete knowledge of Wer-

ner's drug use on or about August 12, 1974. *Rinaldi v Livonia, supra* at 69–70. Thus, we find no legal error either in the legal standard they used to determine when the statutory 90-day notice period begins to run or in their appplication of its provision to these facts.

Defendant next argues that the county Civil Service Commission and the circuit court erred in holding that defendant was not denied due process of law by proceeding under an unsworn statement of charges, having the attorney for the Civil Service Commission being the same attorney who represents the sheriff in this proceeding, or allowing this proceeding to continue when a prior proceeding involving the same subject matter had ended in the compromise between the parties.

Werner claims at the outset that because the charging document filed with the Civil Service Commission was not "sworn to or before a notary public or a judicial officer" that it "lacks the basic formalism that assures the accuracy and validity of the charges". Defendant counters that the statute does not require a sworn statement of the charges.

MCLA 51.362; MSA 5.1191(112) requires "the written statement of the charges and the reasons for such actions". We thus see no specific statutory mandate that the charging document be sworn. We also recognize that Werner is protected from unfounded charges by various procedures set forth in the statute. If the action is found to be unjustified, for instance, no notation is made in his record. If the action is found to be justified, the record is sealed and is not made available to the public, short of direct appeal to the circuit court.

Likewise, we find another earlier case in which the charging document was unsworn. *Oesterreich*

*v Fowle,* 132 Mich 9; 92 NW 497 (1902). In *Oesterr- eich,* dealing with the discharge of a Detroit police officer under 1901 LA 416, the act specifically required a sworn complaint. The Michigan Su- preme Court found a waiver of the requirement of a sworn complaint by Oesterreich's failure to raise the question in the hearing.

In this case, plaintiff Werner objected to the fact that the document was unsworn by his motion to dismiss, but here no statutory requirement exists. Further, we find the sheriff did sign the notice of discharge. We find this fact, coupled with the protections provided by the statute, sufficient to prohibit the finding of a denial of due process.

Plaintiff Werner asserts as well that he was denied due process because the same attorney, Philip J. Anderson, represented both the Macomb County Sheriff and the Civil Service Commission. When the possible conflict was raised, attorney Anderson stated:

"MR. ANDERSON: There are issues raised with re- spect to the same attorney allegedly representing the Sheriff as well as the Civil Service Commission. In this particular instance, it seems obvious that that is not true.

"I will say this, and I will offer testimony myself, if you would like to hear it, that as the Assistant Civil Counsel for Macomb County, in the past, our office has represented both the Sheriff and the Civil Service Com- mission. In this particular case the only comment that I made directly to the Civil Service Commission, to my recollection, relative to this case was this: That is *[sic]* appeared that this case was going to materialize and, secondly, it was our suggestion that the Civil Service Commission obtain independent counsel, which they, of course, have."

No evidence to contradict this statement was in- troduced at any of the hearings.

In his brief, plaintiff Werner complains only of attorney Anderson's dual role in this proceeding alone. That claim is not supported by the record. We therefore find no violation of due process based on attorney Anderson's dual representation of Sheriff Almstadt and the Civil Service Commission. No reversible error occurred in this situation.

Plaintiff finally contends that he was denied due process by being subsequently discharged after a settlement of an earlier discharge arising out of events involving the same narcotics theft transaction on April 8, 1974. Plaintiff's underlying theories to support the unfairness of the second discharge weave from double jeopardy to various forms of estoppel. We will only discuss those arguments which have not been foreclosed by the factual determinations of the Civil Service Commission.

The first discharge was based on Werner's part in the theft of heroin from the Roseville police department. The second discharge was based on Werner's use of the stolen drugs and his admission of other drug use. We disagree with plaintiff that any double jeopardy theory would apply here. The fact is inescapable that the second discharge would have to be classified as "undiscovered" at the time of the first discharge because of the Civil Service Commission's determination that the discharging authority first learned of Werner's involvement after August 12, 1974. See *People v White,* 390 Mich 245, 258, fn 6; 212 NW2d 222 (1973).

Further, we find that a similar result was reached long ago on a different theory. *Lilienthal v Wyandotte,* 286 Mich 604, 617; 282 NW 837 (1938). In *Lilienthal,* the Michigan Supreme Court held that once charges against an officer were dismissed, they could not be "resurrected", but that a

discharging authority could look to other misconduct. In other words, a settlement concerning one aspect of misconduct arising out of single event could not have the effect of barring subsequent proceedings regarding other aspects of misconduct involving the same event or transaction.

Further, we do not find unfair the fact that plaintiff Werner's discharge was based solely on his judicial admission of August 12, 1974. We often let people convict themselves of crimes solely on their own admissions by pleading guilty. We also find the use of transcripts from judicial proceedings is allowable in this type of hearing under certain circumstances. See *Aller v Detroit Police Department Trial Board,* 309 Mich 382, 385–391; 15 NW2d 676 (1944). We find no difficulty in sustaining the findings of the circuit court and Civil Service Commission based upon plaintiff Werner's admissions in the August 12, 1974, proceeding.

Finally, because the Civil Service Commission found that the sheriff had no definite knowledge of Werner's drug use, as opposed to theft, until after his testimony was given in the August 12, 1974, proceeding, we also discern no grounds for finding an estoppel of the discharging authority and the Civil Service Commission in their proceedings to discharge Werner subsequent to his reinstatement after the first discharge.

Having reviewed all of plaintiff's allegations of error, we find none persuasive, and so sustain the rulings of the Civil Service Commission and the Macomb County Circuit Court.

Affirmed.