PEOPLE v ANDERSON

Docket No. 59802. Submitted June 17, 1982, at Lansing.—Decided
September 7, 1982.

Rodney R. Anderson was convicted of habitually causing or
permitting the health of a minor child to be injured while the
child was under his protection, Huron Circuit Court, M. Rich-
ard Knoblock, J. Specifically, defendant was found to have
failed to procure medical care for his infant daughter, who had
sustained several injuries over a two-month period. Defendant
appeals, alleging that such failure does not constitute an of-
fense under the applicable statute. *Held:*

The failure to provide medical care for an injured child is
included within the statutory language providing criminal
sanctions for a parent who "permits the health of such child to
be injured". Such a construction is consonant with the appar-
ent intent of the Legislature to protect minor children from
cruel or negligent parents or guardians.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

Standard rules of statutory construction require that words be
given their ordinary meaning unless the context indicates that
a different sense was intended; a court is to use common sense
in its construction of a statute, construing the statute as a
whole.

2. CRIMINAL LAW — PARENT AND CHILD — FAILURE TO PROVIDE
MEDICAL CARE.

Failure of a parent to provide necessary medical care for his or
her injured minor child is an offense chargeable under the
statute proscribing a parent's permitting "the health of such
child to be injured" (MCL 750.136; MSA 28.331).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Karl E. Kraus,* Prosecut-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 165, 206.
[2] 59 Am Jur 2d, Parent and Child § 59.

ing Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*John D. Schwedler,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and J. E. McDONALD,* JJ.

D. E. HOLBROOK, JR., P.J. Defendant was found guilty following a bench trial of habitually causing or permitting the health of a minor child to be injured, her life endangered by exposure, want or other injury to her person, while a parent, guardian or person under whose protection said child then was. MCL 750.136; MSA 28.331. The defendant was sentenced to 2-1/2 years probation, with the first year to be spent in the county jail. Defendant appeals as of right.

Defendant is the father of Kelly Sue Anderson, a baby girl born prematurely on October 13, 1980. Evidence was introduced at trial that the child had sustained several injuries between the time of her release from the hospital on November 26, 1980, and January 11, 1981. The injuries Kelly sustained included a transverse fracture of the right femur, multiple chip fractures on the right leg at the knee joint, a fracture of the left leg, a skull fracture, and a bilateral subdural hematoma.

Kelly was taken to the emergency room at Scheurer Hospital in Pigeon, Michigan, on January 10, 1981, where she was examined by Dr. Charles Elliott. He testified that his examination disclosed a partially healed fracture of the right femur, which he estimated to be at least two weeks old but probably older, based on the extent of healing which had already occurred, and a skull

---

* Circuit judge, sitting on the Court of Appeals by assignment.

fracture of indeterminable age. Dr. Elliott advised the defendant that Scheurer Hospital did not have the facilities necessary to care for the child. He then telephoned the Family Practice Center in Flint, the hospital where the child had been born and treated directly after bith, and set up a 4:30 p.m. appointment with the child's doctor. Dr. Elliott testified that the defendant agreed to take the child to the Flint hospital for the appointment. He also testified that he told defendant the extent of the child's injuries and that the baby was very ill and should be immediately hospitalized.

The defendant did not take Kelly to a Flint hospital until the following day, January 11, 1981. The baby was further examined and treated at Hurley Medical Center in Flint after transfer from St. Joseph Hospital. Dr. Karen Bentley, a pediatrician at Hurley Medical Center specializing in child abuse and adolescence, testified as to the additional injuries detailed above not disclosed in Dr. Elliott's examination. Dr. Bentley testified that the fracture of the right femur was approximately two to three weeks old. Based on the lack of swelling, Dr. Bentley testified that the skull fracture was from three or four days to one month old.

As to the detrimental effects suffered by the child in not having her injuries promptly treated, Dr. Bentley listed: pain from the broken right femur; possibility of internal bleeding from the skull fracture; and an increase in cranial pressure and consequent death of brain cells from the subdural hematoma. In addition, the delay caused the subdural hematoma to require surgery, thus increasing the chance of infection in the brain.

Other witnesses also testified that they had seen the baby with a swollen right leg and bruises about her face. Defendant's wife's stepmother tes-

tified that on numerous occasions she urged defendant to take Kelly to the doctor.

Defendant, his wife, and baby were involved in an automobile accident on January 7, 1981. Defendant's car had been forced off the road into a snow-filled ditch and defendant testified that during the collision the baby flew out of his arms, hit the dash with the right side of her face and body, and then fell to the floor. The defendant testified that he was concerned about the baby but that she appeared unhurt at the time, so he did not take her to the doctor.

The defendant also testified to two other occasions when the baby might have been injured. The first occasion was on December 18, 1980. The defendant testified that while carrying the baby he slipped when entering the house, falling to the floor with the baby, whose leg became lodged under his body. He and his wife looked at the baby's leg, but he did not take the child to the doctor at that time.

The second occasion when the baby could have been injured was on December 27, 1980. Defendant testified that he grabbed the baby by the face to keep her from falling to the floor when she began to fall while he was handing her to his wife. Although the baby's face was bruised the following day, he did not take her to the doctor.

The trial court found defendant guilty for failure to have the baby examined after the December 18 and December 27, 1980, accidents, as well as his delay in seeking treatment for the child after the automobile accident on January 7, 1981.

The sole issue we are called upon to decide is whether a parent's failure to provide necessary medical treatment constitutes an offense under

MCL 750.136; MSA 28.331. The pertinent portion thereof provides as follows:

"Sec. 136. Any parent or guardian or person under whose protection any child may be, * * * who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, * * * shall, upon conviction, be deemed guilty of a felony * * *."[1]

In this case, the information charged that the defendant:

"Rodney Reed Anderson, late of 4782 Arbela Road, Millington, Michigan did cruelly or unlawfully punish or did habitually cause or permit the health of the minor child, to-wit: Kellie M. Anderson [sic], age 2 months, to be injured or her life endangered by exposure, want or other injury to her person while being a parent, guardian or person under whose protection said child may be; Contrary to Sec. 750.136; CL 1970, as amended; MSA 28.331."

Defendant contends that failure to provide such medical attention is not an offense under the foregoing statute and cites *People v Mankel,* 373 Mich 509; 129 NW2d 894 (1964), and *People v Schneff,* 392 Mich 15; 219 NW2d 47 (1974). Defen-

[1] In pertinent part MCL 750.136; MSA 28.331 reads as follows:

"Sec. 136. Any parent or guardian or person under whose protection any child may be, who cruelly or unlawfully punishes, or wilfully, unlawfully or negligently deprives of necessary food, clothing or shelter, or who wilfully abandons a child under 16 years of age, or who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, or causes or permits him or her to engage in any occupation that will be likely to endanger his or her health, or deprave his or her morals or who habitually permits him or her to frequent public places for the purpose of begging or receiving alms, or to frequent the company of or consort with reputed thieves or prostitutes, or by vicious training depraves the morals of such child, shall, upon conviction, be deemed guilty of a felony * * *."

dant's argument is misplaced. *Schneff* and *Mankel* stand only for the proposition that a failure to provide medical attention is not an offense cognizable under the portion of the statute prohibiting the wilful, unlawful, or negligent deprivation of "necessary food, clothing or shelter". Since this was not the offense alleged against this defendant, neither case is applicable here.

Standard rules of statutory construction require that words be given their ordinary meaning unless the context indicates that a different sense was intended. *Werner v Macomb County Civil Service Comm,* 77 Mich App 533; 258 NW2d 549 (1977). In addition, the court is to use common sense in its construction of a statute, and the statute must be construed as a whole. *Cronin v Minster Press,* 56 Mich App 471; 224 NW2d 336 (1974); *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971).

When the phrase "habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person" is given its ordinary meaning, it is clear that failure to provide necessary medical attention is an offense. Common sense dictates that the phrase "permits the health of such child to be injured" includes a parent's failure to provide medical attention for an injured child. The phrase can easily be read as including both a parent's habitually allowing a child to *become injured,* as well as allowing the child to *remain injured.* Both readings appear applicable here.

Hence, we hold that charging the defendant with failure to provide medical attention for life-threatening injuries is consonant with the apparent intention of the Legislature to protect minor

children from cruel or negligent parents or guardians and the issue framed above is answered in the affirmative.

Affirmed.