MOULTON v DEPARTMENT OF REVENUE

Opinion of the Court

1. Administrative Law—Civil Service Commission—Appellate Review—Constitutional Law.

   Appellate review of findings of fact and decisions of the Civil Service Commission must include a determination that the findings and rulings are authorized by law and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record (Const 1963, art VI, § 28).

2. Administrative Law—State Employees—Dismissal—Psychiatric Examination.

   An employee of the department of revenue who was in the process of appealing an unsatisfactory service rating may not be dismissed for failing to submit to an examination by a department-selected psychiatrist.

3. Administrative Law—State Employees—Dismissal—Substantial Evidence.

   Dismissal of an employee of the department of revenue because of unbecoming conduct was supported by competent, material and substantial evidence where the employee made written statements charging practically everybody in the employment controversy with crimes ranging from perjury to embezzlement, the record is full of vitriolic statements made by the employee challenging the integrity and morality of many department of revenue and Civil Service Commission officials, the employee was given several opportunities in administrative hearings and in circuit court to substantiate and defend the charges against her, and she was unsuccessful in substantiating and defending the charges.

References for Points in Headnotes

[1] 15 Am Jur 2d, Civil Service § 45.

[2–5] 1 Am Jur 2d, Administrative Law § 175.

   15 Am Jur 2d, Civil Service §§ 36, 38.

   63 Am Jur 2d, Public Officers and Employees § 192.

[5] 15 Am Jur 2d, Civil Service § 48.

DISSENT BY M. F. CAVANAGH, J.

4. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—RULES—MEDI-
   CAL EXAMINATION—SICK LEAVE.

   *A Civil Service Commission rule providing that an employee may
   be required to present medical certification of physical or
   mental fitness to continue working does not authorize the
   department of revenue to require an employee to submit to a
   doctor's examination where no question has been raised regard-
   ing sick leave benefits; furthermore, the department cannot
   require an employee to be examined by a doctor chosen by the
   department (Civil Service Commission Rule 10.16).*

5. ADMINISTRATIVE LAW—STATE EMPLOYEES—DISMISSAL—CIVIL SER-
   VICE—HEARING BOARD—RIGHT TO APPEAL.

   *A dismissal of an employee of the department of revenue which
   was based upon (1) renewed charges against department mem-
   bers contained in a letter by the employee to appeal a Civil
   Service hearing board decision and upon (2) the bad faith with
   which a letter of retraction had been written was improper
   where (a) the employee was wrongly dismissed the first time
   and it was not necessary for her to sign a letter of retraction,
   (b) the letter of appeal was insufficient to sustain the dismissal,
   and (c) an employee cannot be dismissed for exercising the
   right to appeal.*

Appeal from Ingham, James T. Kallman, J.
Submitted January 13, 1976, at Lansing. (Docket
No. 22561.) Decided March 8, 1976. Leave to ap-
peal denied, 397 Mich —.

Dorothy F. Moulton appealed to the Civil Ser-
vice Commission her dismissal from employment
with the department of revenue. Dismissal af-
firmed. Plaintiff appealed to the circuit court. Af-
firmed. Plaintiff appeals by leave granted. Af-
firmed.

*Newman & Mackay,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Charles D.
Hackney* and *Edgar L. Church, Jr.,* Assistants

Attorney General, for the department of revenue and the Civil Service Commission.

Before: N. J. KAUFMAN, P. J., and T. M. BURNS and M. F. CAVANAGH, JJ.

T. M. BURNS, J. Because of the almost 14-year history of this case, only a summary of the facts will be presented.

Plaintiff was an employee of the Michigan Department of Revenue (DOR). She received an unsatisfactory service rating because of an antagonistic attitude toward her superiors which disrupted her work area. Plaintiff appealed the rating to the Michigan Civil Service Commission (CSC). The CSC affirmed the rating. Plaintiff appealed to the state personnel director. He found no error. In the course of these appeals, plaintiff sent letters to the various parties including the CSC and the Governor accusing her superiors of lies, cover-ups, and other forms of misbehavior, improprieties and criminal conduct. Before she was done, plaintiff had made written accusations against the state revenue commission, the chief deputy commissioner, the personnel officer of the department of revenue, the state personnel director and others. Her most vehement and serious charges, however, were made against her supervisors in the DOR. Plaintiff was advised by both DOR supervisors and the state personnel director that her conduct exhibited great disloyalty and was unbecoming a state employee. She was warned that a continuation of such conduct could result in her dismissal. Plaintiff then wrote a letter to the Governor in which she characterized her immediate supervisor as a liar and embezzler.

A DOR commissioner then ordered plaintiff to undergo a psychiatric examination by a psychia-

trist chosen by the department. Plaintiff failed to keep the appointment with the psychiatrist and was dismissed from her job. The stated reasons for her dismissal were: (1) "continuation of her irresponsible accusations of and contemptuous attitude toward departmental supervision" and (2) failure to keep an appointment with the department-selected psychiatrist. The CSC upheld the dismissal on appeal, finding that both of the stated reasons were true. The DOR rescinded the dismissal, however, and placed plaintiff on sick leave upon recommendation of her psychiatrist. Plaintiff later presented a report from another psychiatrist who concluded that plaintiff was not ill. She also signed a written apology in which she retracted the accusations against DOR and CSC personnel. She agreed to refrain from any continuation of such charges and stated that she understood that continuation of such charges would result in her dismissal.

Two weeks later, plaintiff wrote a letter to the CSC seeking to appeal the affirmance of her original dismissal. The letter contained, once again, assertions of bad faith and corruption on the part of DOR and CSC personnel. Because of this letter, plaintiff was again dismissed by DOR. Plaintiff appealed. The CSC upheld the dismissal.

Plaintiff then informed the state personnel director that a transcript of a previous hearing had been altered illegally and that she was seeking an investigation by the Ingham County Prosecutor and the Attorney General. The CSC later denied plaintiff's request that it reconsider its affirmance of her dismissal. Plaintiff again wrote to the Governor asking him to look into the "fraud and conspiracy". She thereafter informed all parties involved (including DOR and CSC personnel, the

state personnel director and a DOR commissioner)
that she would publish a story about the part they
played in "certain alleged frauds, criminal conspi-
racies, libel, slander, perjury, and bribery * * * ".

Plaintiff filed a motion in the Ingham County
Circuit Court for leave to file a delayed appeal and
for leave to file a complaint against the DOR. Both
motions were granted but the complaint was later
dismissed. The trial court permitted plaintiff to
present additional testimony. The judge subse-
quently filed an opinion in which he stated that he
allowed the additional testimony because of plain-
tiff's complaints that she had not been afforded a
full hearing before the CSC. The judge ruled that
after hearing all the testimony, he felt that the
plaintiff had failed to establish that the defendants
were in error in discharging her. Plaintiff then
requested more specific and complete findings of
fact. The court complied, finding that plaintiff was
guilty of conduct unbecoming a state employee. He
found that plaintiff's accusatory letters were writ-
ten in bad faith and that she failed to establish
any irregularities in the procedures followed by
the CSC. This Court granted plaintiff's application
for leave to file a delayed appeal.

Appellate review of findings of fact and decisions
of the CSC must include a determination that such
findings and rulings are authorized by law and, in
cases in which a hearing is required, whether the
same are supported by competent, material and
substantial evidence on the whole record. Const
1963, art VI, § 28. *Viculin v Department of Civil
Service,* 386 Mich 375; 192 NW2d 449 (1971).

Plaintiff's first dismissal was based upon two
factors: her accusations of and contemptuous atti-
tude toward departmental supervision and her
failure to keep an appointment with a department-

selected psychiatrist. The second basis is not "authorized by law". *Peterson v Department of Natural Resources,* 392 Mich 68; 219 NW2d 34 (1974). Plaintiff's dismissal for that reason was improper.

Plaintiff's later dismissal was based upon her unbecoming conduct. Throughout the course of the many appeals of various actions taken by the defendants, plaintiff made written statements charging practically everyone involved in the controversy with crimes ranging from perjury to embezzlement. Many of those statements were made in the form of attempts to appeal actions taken by the defendants; others were not. Many of the charges had nothing whatever to do with any of the actions taken against her or her attempts to appeal those actions. We cannot conclude that the findings of the CSC or the trial court that plaintiff had engaged in conduct unbecoming a state employee were not supported by competent, material and substantial evidence. The record is full of vitriolic statements made by plaintiff challenging the integrity and morality of many DOR and CSC officials and personnel. Plaintiff was given several opportunities in administrative hearings and in the circuit court to substantiate and defend those charges. Plaintiff simply was unsuccessful. Any claim by plaintiff that she was denied due process of law would be spurious. The CSC and the circuit court judge bent over backward to let plaintiff work out her problems and to present her side of the story. Plaintiff was given much more than her day in court.

Affirmed.

N. J. KAUFMAN, P. J., concurred.

M. F. CAVANAGH, J. *(dissenting).* With all respect I must dissent. I would reverse and order rein-

statement. Neither dismissal of Moulton is supported by competent, material and substantial evidence on the whole record. *Peterson v Department of Natural Resources,* 392 Mich 68; 219 NW2d 34 (1974).

The first dismissal, on June 19, 1963, was based on two grounds: (1) a "continuation of her irresponsible accusations of and contemptuous attitude toward departmental supervision after the results of the Civil Service Commission's decision of May 8, 1963", (as evidence of her irresponsible accusations and contemptuous attitude, reference was made to two letters written by Moulton dated May 25 and May 31, 1963); and (2) her failure to keep an appointment with a psychiatrist, arranged by the department, to determine her "physical and mental fitness to continue working, as allowed by Civil Service Rule 10.18" (now 10.16). The hearing board of the Civil Service Commission affirmed the dismissal of June 19, 1963, and the superseding compulsory sick leave. The Civil Service Commission affirmed the hearing board.

The standard of review is established by Const 1963, art VI, § 28. *Viculin v Department of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971). Thus our review is to determine whether the decisions of the commission and the hearing board are "authorized by law" and "supported by competent, material and substantial evidence on the whole record". Const 1963, art VI, § 28. Moulton's failure to keep an appointment, arranged by the department, with a psychiatrist, chosen by the department, is not a grounds for dismissal authorized by law. *Peterson v DNR, supra.* Civil Service Rule 10.16 (10.18) did not authorize the department's action.

"This rule does not grant authority to require a

psychiatric examination where no question has been raised regarding paid sick leave benefits. Just as clearly it does not authorize the "appointing authority" to require an employee to submit to an examination by a doctor chosen by the appointing authority." 392 Mich at 75–76.

At the time the department required the appointment with Dr. Casey, no question had been raised regarding paid sick leave benefits. Furthermore, the department cannot require Moulton to be examined by a doctor chosen by the department.

The failure to keep the appointment clearly weighed heavily in the hearing board's decision. For example, I cite the following excerpt from the board's findings in its decision of December 19, 1963:

"The evidence indicates that the Department of Revenue acted properly in its dismissal notice of June 19, 1963. The employee had made irresponsible accusations against, and shown contempt for, the department. She announced that she would not be examined by a psychiatrist employed by the department. She did not appear for the examination scheduled for her. She had been informed by the department that she could not return to work unless she kept the appointment. The department had sufficient cause to demand the examination."

Apart from the failure to keep the appointment, the evidence of record as to the first dismissal is insufficient to sustain that dismissal. Const 1963, art VI, § 28. That the dismissal was later changed to an involuntary or compulsory sick leave is not material to the issue.

The hearing board directed the department to take final action and either reinstate or dismiss Moulton. On December 30, 1963, Moulton signed a "letter of retraction" retracting charges involving

the integrity of several members of the department. In the letter she also agreed to refrain from any continuation of such charges and stated that she understood that repetition or continuance of such charges and accusations would result in her dismissal.

On January 15, 1964, Moulton wrote a letter to the Civil Service Commission "to appeal the Hearing Board's decision on [her] appeal of a forced seven month sick leave on mental grounds, etc." On January 20, 1964, Moulton was dismissed because of that letter. The report of separation states that the dismissal is the result of the letter, in which—according to the report of separation— Moulton "directly attacks the integrity of a Civil Service staff member, mocks the Hearing Board procedure, and indirectly attacks the integrity of the Revenue Commissioner and other employees". The report continues:

"This letter, which is in the form of an appeal of the Hearing Board's decision of December 19, 1963, is written in the same style of irresponsible accusations and threatened litigation as her previous letters. On December 30, 1963, Mrs. Moulton signed a statement in which she apologized for and retracted the charges that she had made involving the integrity of several state employees who have been connected with this case. In this apology and retraction, which was reviewed and approved by Mr. Brake, her attorney, was a statement that any repetition or continuance of her previous charges and accusations would result in her dismissal. On page 7 of her letter dated January 15, 1964, she reiterates 'as I have stuck to the truth' and thereby renews these charges and allegations repudiated just 15 days previously. We must, therefore, conclude that she believes her charges to be true and that her retraction and apology was signed in bad faith."

The Civil Service Commission affirmed the dis-

missal, despite several letters from Moulton attempting to clarify the "misunderstanding" by explaining that her prior retraction, while expressing her regret for impugning the integrity of certain individuals and the Civil Service Commission, was not intended to be a waiver of any further appellate processes.

Since Moulton was wrongly dismissed the first time, it was not necessary for her to sign a "letter of retraction" in order to be reinstated. Furthermore, the letter of January 15, 1964, is insufficient to sustain Moulton's second dismissal. The January 20, 1964, report of separation greatly exaggerates any defects or occasional extravagance of language in the letter. I found no "irresponsible accusations" nor any "threatened litigation", except for the stated intention to take her case to the Supreme Court, if necessary. The device of construing the phrase "as I have stuck to the truth" as a renewal of "improper" allegations as to the "integrity" of certain members of the department, which Moulton had retracted in her letter of December 30, 1963, is just that, a device. The content of Moulton's January 15 letter of appeal does not support the dismissal.

Nor can the appeal itself warrant dismissal. Moulton did not agree in the December 30 letter of retraction not to appeal her first dismissal. She had a right to appeal. She cannot be dismissed for exercising that right.

I would reverse and remand for the entry of an order reinstating Moulton with back pay.