BATTISTE v DEPARTMENT OF SOCIAL SERVICES

Docket No. 81819. Submitted February 6, 1986, at Lansing. Decided September 9, 1986. Leave to appeal applied for.

Petitioner, William P. Battiste, Jr., was employed as a hearing officer in the Bureau of Administrative Hearings, Department of Social Services. Following the implementation by the DSS of a revised rehearing policy, under which petitioner's supervisor could order a case reheard by another hearing officer if a claimant requests a rehearing as to questions of law, petitioner expressed his objections to the policy by issuing an order to his supervisor and the department's deputy director ordering them to cease and desist now and in the future from interfering in any way with his decision in a case where his supervisor determined that a rehearing was necessary, contending that they had no authority to order rehearings of cases. Petitioner attached to his order copies of two criminal statutes regarding the failure of state officials to enforce laws and neglect of duty, a page from the Code of Ethics for State Employees regarding unethical influencing of state proceedings, and several cases on administrative law dealing with corruption and bribery. Petitioner sent copies of his order to his supervisor, the Director of the Office of Legal Affairs and the Director of the Bureau of Income Assistance at the DSS, the Governor, the Attorney General, the Governor's legal advisor, the Kent County DSS, most of the other hearing officers in his bureau, and the claimant in the case which was ordered for rehearing. Petitioner was dismissed for conduct unbecoming a state employee and for his failure to carry out the duties and obligations of his office, after he refused to acquiesce to his supervisor's authority to order a rehearing. The decision to dismiss petitioner was upheld by a hearing officer at the conclusion of grievance proceedings, and later affirmed by the Employment Relations Board and the Civil Service Commission. Petitioner then filed a petition for review in the Ingham Circuit Court. The circuit court, James R. Giddings, J., rejected petitioner's claim that a public-sector employee cannot be disciplined when he acts under a reasonable, good faith belief that government conduct involving his duties is illegal. The circuit court also ruled that a Civil Service rule authorizing discipline for conduct unbecoming a state employee was not unconstitutionally vague as

applied to petitioner, but ruled that, under the circumstances of petitioner's case, dismissal was inappropriate. The circuit court remanded the case to the Employment Relations Board, stating that any sanction imposed which would exceed a two-year suspension without pay would be arbitrary and capricious. Respondents Department of Social Services, Department of Civil Service, and Civil Service Commissioner appealed. Petitioner cross-appealed from that part of the circuit court's order which upheld the determination that petitioner had violated the Civil Service rules regarding conduct unbecoming a state employee and failure to carry out duties.

The Court of Appeals *held:*

1. Petitioner's superiors at the DSS abused their discretion in ruling out progressive discipline as an alternative to dismissal. Petitioner's record was unblemished prior to the incident which resulted in his dismissal and progressive discipline would, in this case, have been more effective in achieving the department's objective of having the petitioner acquiesce to the rehearing policy.

2. The independence of hearing officers is essential to the fair and impartial administration of any adjudicatory system for resolving disputes within a governmental agency. The Court of Appeals would support appropriate good faith attempts at insuring the independence of such officers. However, in this case, the Court of Appeals could not determine whether petitioner's action was prompted by good faith. Nevertheless, the manner in which petitioner exhibited his disagreement with the department's rehearing policy was totally inappropriate and necessitated some disciplinary action.

3. The Administrative Procedures Act does not require that a hearing officer who presides at a hearing must also preside at any subsequent rehearing.

4. The Civil Service rule which provides that conduct unbecoming a state employee constitutes proper ground for dismissal, as applied to petitioner, is not void for vagueness.

5. Petitioner's dismissal did not infringe upon his constitutional right to free speech, inasmuch as the dismissal was prompted by his insubordination and was not directed at curtailing petitioner's right to free speech.

Affirmed and remanded to the Employment Relations Board for entry of an order providing for petitioner's suspension without pay for a period not to exceed two years.

1. ADMINISTRATIVE LAW — APPEAL — EMPLOYMENT RELATIONS BOARD — CONSTITUTIONAL LAW.

The proper scope of judicial review of a decision of the Employ-

ment Relations Board is the determination of whether the board's decision is authorized by law and, in cases in which a hearing is required, whether supported by competent, material and substantial evidence on the whole record; substantial evidence is such evidence as a reasonable mind would accept as adequate to support the board's decision (Const 1963, art 6, § 28).

2. CIVIL SERVICE — DISCHARGE OF CIVIL SERVANTS — APPEAL.

The Court of Appeals, where an agency has the discretion to either suspend or dismiss a civil servant for cause, may review the record to determine if such discretion was abused, i.e., whether the agency acted arbitrarily.

3. CIVIL SERVICE — DISCHARGE OF CIVIL SERVANTS — APPEAL.

A single incident of misconduct by a civil servant may be so gross and egregious as to warrant dismissal; however, where the civil servant's previous record is unblemished, an agency's failure to consider progressive discipline as an alternative to dismissal renders the agency's action arbitrary and capricious and subject to reversal upon judicial review.

4. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — RE-HEARINGS — HEARING OFFICERS.

The Administrative Procedures Act does not require that a hearing officer who presides at a hearing must also preside at any subsequent rehearing (MCL 24.279, 24.287[3]; MSA 3.560[179], 3.560[187]).

5. CIVIL SERVICE — DISCHARGE OF CIVIL SERVANTS — CONSTITUTIONAL LAW — FREE SPEECH.

The dismissal of a civil servant does not infringe upon the civil servant's constitutional right to free speech where the dismissal was prompted by the civil servant's insubordination and was not directed at curtailing the civil servant's right to free speech.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Donald L. Reisig* and *Kathleen Corkin Boyle*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *William K. Basinger,* Assistant Attorney General, for respondents.

Amicus Curiae:

*Gregory Holiday,* for Michigan Association of Administrative Law Judges.

Before: ALLEN, P.J., and HOOD and R. C. LIVO,* JJ.

R. C. LIVO, J. Respondents appeal from an order of the circuit court reversing their decision to terminate petitioner's employment, and remanding with instructions to determine a sanction not to exceed a two-year suspension. Petitioner cross-appeals from the circuit court order upholding the determination that petitioner had violated Civil Service Rules 32.1(a) and (b), relating to conduct unbecoming a state employee and failure to carry out duties, respectively.

Petitioner was employed by the Michigan Department of Social Services as hearing officer in the Bureau of Administrative Hearings. The bureau provides administrative hearings to applicants for, or recipients of, public assistance who have been denied assistance or whose grants have been altered, reduced or terminated.

Pursuant to § 9 of the Social Welfare Act, MCL 400.9; MSA 16.409, the Director of the Department of Social Services originally issued all decisions upon the hearing record as to all hearings requested with respect to federally funded assistance programs. At that time, hearing officers issued only "recommended" decisions to the director.

On January 4, 1977, the director of the DSS, because of the large number of hearing decisions required, transferred his authority to issue decisions to the hearing officers. In January, 1978, because of problems with respect to lack of uni-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

formity of decisions coming from the bureau on the same or similar facts, the director implemented a rehearing system which authorized petitioner's supervisor to order rehearings where errors of law might have been made in the original hearing decision. Under this system, the DSS or the claimant could request that a case be reheard as to matters of law, and petitioner's supervisor exercised his discretion to determine if a rehearing was in order. At that point, the case would be assigned to a different hearing officer, usually the deputy director of the bureau, who was bound to accept and utilize the findings of fact of the original hearing officer.[1]

In September, 1979, one of petitioner's decisions was ordered up for rehearing. On October 4, 1979, petitioner issued an order in the same case ordering his supervisor and the deputy director to cease and desist "now or in the future" from interfering in any way with the petitioner's decisions, alleging that they had no authority to order rehearings of cases decided by petitioner. Attached to the order were two criminal statutes regarding state officials' failure to enforce laws and neglect of duty, a page from the Code of Ethics for State Employees regarding unethical influencing of state proceedings, and several cases on administrative law dealing with corruption and bribery. Copies of the order were sent to petitioner's supervisor, the Director of the Office of Legal Affairs, the Director of the Bureau of Income Assistance of the DSS, the Governor, the Attorney General, the Governor's legal advisor, the Kent County DSS, most of the

---

[1] The rehearing system utilized by the department was found to be unlawful in *Newhof v Director, Dep't of Social Services,* (Docket No. 54274, July 15, 1981), an unpublished per curiam opinion of this Court. For reasons stated in Part III of this opinion, the fact is of limited relevance to this opinion.

other hearing officers in the bureau, and the claimant in the case ordered up for rehearing.

On October 12, petitioner's supervisor and the Director of the Office of Legal Affairs met with petitioner, the conflict was discussed, and petitioner was informed that if he acquiesced in his supervisor's authority to order a rehearing, he would not be dismissed. Petitioner refused to acquiesce, whereupon he was informed that he would have to resign or be fired. Petitioner was dismissed on October 23, 1979, for conduct unbecoming a state employee and failure to carry out the duties and obligations of his office. Attached to the report was a memorandum from petitioner's supervisor indicating the factual basis for dismissal, including insubordination and failure to impartially carry out his obligations as a hearing officer.[2]

Petitioner appealed his decision through a fourth-step grievance hearing. The hearing officer rejected petitioner's claim that "progressive discipline" mandated a sanction less than dismissal. He reasoned that petitioner's insubordination made anything less than dismissal an ineffective remedy. Petitioner appealed the decision to the Employment Relations Board, which affirmed, and to the Civil Service Commission, which summarily affirmed on February 3, 1983. Thereafter, the decision was appealed to the circuit court. The circuit court rejected petitioner's claim that a public-sector employee cannot be disciplined when he acts under a reasonable, good faith, although erroneous, belief that government conduct involving his duties is illegal. The lower court further held that

[2] Initially, the department had raised certain other allegations concerning petitioner's job performance. However, those charges were withdrawn at the outset of the fourth-step grievance hearing, leaving only the insubordination and conduct unbecoming a state employee charges to be decided below.

Civil Service Rule 32.1(b) authorizing discipline for conduct unbecoming a state employee was not unconstitutionally vague as applied to petitioner.

However, the circuit court held that, under the circumstances of petitioner's case, dismissal was inappropriate. The court reasoned that petitioner had served several years without breaking any regulations, and that his work record was totally free of reprimands, suspensions or demotions. The court found that the lack of any attempt at corrective discipline in these circumstances required reversal. The court remanded to the Employment Relations Board, stating that "any sanction imposed which exceeds two years' suspension without pay would be arbitrary and capricious."

We first address respondents' sole claim on appeal.

I

Respondents contend that the decision of the Employment Relations Board was supported by competent, material and substantial evidence on the whole record and, therefore, must be affirmed. Const 1963, art 6, § 28.

Substantial evidence is such evidence as a "reasonable mind" would accept as adequate to support the decision. *Parnis v Civil Service Comm,* 79 Mich App 625, 629-630; 262 NW2d 883 (1977). A decision of the Civil Service Commission will be reversed only if the evidence firmly establishes that the agency abused its discretion by the action the agency took. *Crider v Michigan,* 110 Mich App 702, 716; 313 NW2d 367 (1981), lv den 414 Mich 953 (1982). Any ambiguities are to be resolved in favor of the commission's decision. *Werner v Macomb Co Civil Service Comm,* 77 Mich App 533,

540-541; 258 NW2d 549 (1977), lv den 402 Mich 836 (1977).

Our review of the record leads us to conclude that a reasonable person could not accept as adequate the evidence supporting petitioner's discharge.

Progressive discipline may be utilized at the discretion of the commission. See *Golembiowski v Madison Heights,* 128 Mich App 682, 688; 341 NW2d 793 (1983). This conclusion is premised on the fact that where an agency is given the discretion to "suspend or dismiss" an employee "for cause" this Court may review the record to determine if that discretion was abused, i.e., whether the agency action was arbitrary.

Section 32 of the Civil Service Rules promulgated in 1978 provides three "causes" for suspension or dismissal. The Civil Service Commission is bound to follow this rule, which it promulgated, of "for cause" discipline or suspension. *Rand v Civil Service Comm,* 71 Mich App 581; 248 NW2d 624 (1976). Here, the record is devoid of evidence that the department ever considered progressive discipline as an alternative to dismissal for petitioner's egregious act of insubordination.

Civil Service Rule 32.1 permits dismissal *or* suspension for cause, impliedly in the discretion of the agency. This requires the agency to exercise its discretion and act reasonably in deciding between alternatives in any given factual situation.

A single incident of misconduct may be so gross and egregious as to warrant dismissal. However, where an employee's previous record is unblemished, we believe that a department's failure to *consider* progressive discipline renders its decision-making arbitrary. Here, where that dismissal was for misconduct indicting the very person who disciplined the employee, we must also conclude that

failure to consider progressive discipline at least evidences caprice, caprice understandable in the circumstances here. This Court does not second guess departmental decision-making. Nonetheless, where an agency has the discretion to act in a certain manner, this Court must see that the discretion is exercised where appropriate, and not abused in the process of its exercise.

To the extent the record supports an inference that the department ruled out progressive discipline as a practical alternative because of petitioner's stated intention not to accede to legitimate authority, we must again conclude that such an exercise of discretion is arbitrary and capricious.

In determining whether dismissal for improper conduct is an appropriate remedy in a governmental employment setting, there must be a balance struck between the rights of the employee and the need to have governmental operations run smoothly. *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152, 164; 365 NW2d 93 (1984). Requiring a civil servant to verbally acknowledge departmental authority as a condition to keeping his job bears a reasonable relationship to the government's interest in having its operations run smoothly. But neither petitioner nor his superiors could predict his future attitude and actions in that regard. In fact, where a department seeks an attitude change, progressive discipline would appear to be a preferred method in bringing about that change. Discharge premised on a refusal to give a statement of intent permits no such change and furthers no valid governmental purpose.

Admittedly, the misconduct here was wanton and wilful, and the record discloses that it disrupted the bureau. Therefore, we find the circuit court's remand for entry of a disciplinary order

not to exceed two years' suspension without pay to be reasonable and supported by substantial evidence on the record. That order is affirmed.

II

Petitioner contends that being disciplined for the conduct at issue violates public policy because his actions represented a good faith attempt to protect the due process rights of claimants.

It is difficult for this Court, which has never observed the demeanor of Mr. Battiste, to determine if he made his decision to proceed based on a good faith belief that the independence of the department's hearing officers, and consequently the due process rights of claimants, had been threatened.

The independence of hearing officers is essential to the fair and impartial administration of any adjudicatory system for resolving disputes within a governmental agency. Accordingly, this Court would support good faith, appropriate attempts at insuring the independence of such officers.

However, in the instant case, any such good faith notwithstanding, Mr. Battiste proceeded in a wholly inappropriate manner. The issuance of an official-looking order, a copy of which was mailed to the claimant, which contravened and purported to set aside an order of his own superiors in a case in which Battiste had already fully performed his own function, was inexcusable. In this case of "whistle-blowing" gone amok, discipline for such conduct is not contrary to public policy, but, in fact, is mandated by public policy.

III

In a similar vein, petitioner argues that he

cannot be punished for asserting jurisdiction over the rehearing because such an assertion is, according to petitioner, mandated by the Administrative Procedures Act (APA), MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* and supported, at least analogously, by MCR 2.613(B). We find petitioner's claim in this regard to be without merit.

Petitioner contends that §§ 79 and 87(3) of the APA, MCL 24.279; MSA 3.560(179), and MCL 24.287(3); MSA 3.560(187)(3), read in conjunction, require that the same hearing officer preside where a rehearing is ordered. Petitioner claims this result is buttressed by the policy behind MCR 2.613(B), which provides that no judgment or order of a circuit judge may be set aside by another circuit judge.

Section 79 of the APA provides for designated persons to serve as presiding officers in contested cases. It provides for assignment of another presiding officer in case of personal bias or where it is impracticable for the officer originally designated to preside to "continue the hearing." Section 87(3) provides that "[a] rehearing shall be noticed and conducted in the same manner as an original hearing." We reject petitioner's contention that the same officer must preside over a rehearing unless biased or unless it is otherwise impracticable for him to preside at the rehearing.

Practically speaking, a presiding officer's jurisdiction substantially ends upon rendition of his decision following the hearing over which he presided. Any rehearing ordered thereafter, in the discretion granted the agency by § 87(3), must be conducted with the same procedural safeguards of §§ 71-86 of the APA as applied to the original hearing, including a proper presiding officer and safeguards for removal and replacement of biased officers, or officers otherwise unable to preside. We

decline to hold that § 87(3) requires that the same presiding officer preside at the rehearing. See *Campbell v Marquette Prison Warden,* 119 Mich App 377, 382-383; 326 NW2d 516 (1982).

Because § 87(3) of the APA specifically permits an agency to order rehearings, we reject petitioner's reliance on the policy behind MCR 2.613(B), which prohibits one circuit judge from setting aside the judgment or order of another circuit judge in the absence of a disability of the latter. We believe that § 87(3) represents a clear legislative intent to permit such rehearings in administrative cases to take full advantage of the agency's specialized expertise before jurisdiction is relinquished.

Petitioner argues that because a panel of this Court found the rehearing system utilized by the DSS in the instant case contrary to the mandates of § 87(3), public policy dictates that he not be disciplined for protesting against that system. In an unpublished per curiam opinion, *Newhof v Director, Michigan Dep't of Social Services,* (Docket No. 54274, July 15, 1981), this Court held that because the rehearing system utilized did not permit a claimant to present evidence or fully argue his case on rehearing, the system violated the mandate of § 87(3) that rehearings "be noticed and conducted in the same manner as an original hearing."[3]

The fact that the system violated the statute notwithstanding, petitioner has no colorable claim in this regard. As explained above, a rehearing need not be presided over by the same officer who presided at the original hearing. The Court in *Newhof* did not so hold. Thus, irrespective of petitioner's claim of continuing jurisdiction and con-

---

[3] We note that unpublished opinions of the Court of Appeals have no precedential value. MCR 7.215(C); *Stine v Continental Casualty Co,* 419 Mich 89, 94, n 2; 349 NW2d 127 (1984).

trary to his allegation of unethical conduct, we find these claims to be without merit. The channels petitioner used to vent his protests were wholly inappropriate.

IV

Next, petitioner attacks Civil Service Rule 32.1(b) which states that "conduct unbecoming a state employee" constitutes proper ground for dismissal. Petitioner contends Rule 32.1(b) is void for vagueness because it fails to warn civil servants of the conduct it proscribes.

Regardless of how vague such a rule may be in the abstract, if petitioner's conduct was clearly violative of that rule, his challenge will not be sustained. *Parker v Levy,* 417 US 733, 756; 94 S Ct 2547; 41 L Ed 2d 439 (1974); *Rinaldi v Livonia,* 69 Mich App 58, 65-66; 244 NW2d 609 (1976).

In *Rinaldi,* this Court relied substantially on the United States Supreme Court's opinion in *Parker, supra.* In *Parker,* the Court upheld the court martial of an Army physician under the "conduct unbecoming an officer and gentleman" standard. The Court's opinion emphasized three characteristics of the physician's case in rejecting the "vagueness" challenge: (1) Prior construction of the regulation narrowed its scope and supplied "considerable specificity by way of examples of the conduct." 417 US 754. (2) The regulations "by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." 417 US 755-756. (3) Because of the "reasons which differentiate military society from civilian society, . . . Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than

it is when prescribing rules for the latter." 417 US 756.

Reviewing petitioner's case, similar conduct was found to constitute conduct unbecoming a state employee in *Moulton v Revenue Dep't,* 67 Mich App 668, 670-671; 242 NW2d 473 (1976), lv den 397 Mich 832 (1976). In *Moulton,* the employee, after receiving an unsatisfactory service rating, wrote a letter to the Michigan Civil Service Commission and to the Governor accusing her superiors of lies, cover-ups, and embezzlement. Moreover, the petitioner in the instant case must have known that his actions in circulating his order to the claimant, hearing officers, and other state officials would defame and disrupt the department's hearing system. In fact, petitioner confided in another hearing officer that he "was putting his job on the line." Finally, as a quasi-judicial officer, petitioner should have realized the impropriety of circulating an "order" tacitly accusing agency superiors of unethical and criminal conduct.

Civil Service Rule 32.1 is not void for vagueness as applied to petitioner's conduct.

V

Last, petitioner argues that discipline for his conduct violated his First Amendment rights to free speech. Petitioner cites *Pickering v Bd of Ed,* 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968), and *Pilarowski v Brown,* 76 Mich App 666; 257 NW2d 211 (1977). Both are inapposite.

Both *Pickering* and *Pilarowski* involved the disciplining of employees for speech wholly unrelated to the employment relationship. The present case is more of the type envisioned by the United States Supreme Court in *Arnett v Kennedy,* 416 US 134, 162; 94 S Ct 1633; 40 L Ed 2d 15 (1974).

Discipline was not directed "at speech as such, but at employee behavior, including speech, which [was] detrimental to the efficiency of the employing agency." 416 US 162.

The order of the circuit court is affirmed. Accordingly, this matter is remanded to the Employment Relations Board for entry of an order in accordance with the circuit court opinion and order in the instant case.